UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| ZAHNGA E. PEABODY, | Case No. 3:25-cv-00594-AR |
| Plaintiff, | **FINDINGS AND RECOMMENDATION** |
| v. | |
| THERMO FISCHER SCIENTIFIC INC., | |
| Defendant. | |

**ARMISTEAD, United States Magistrate Judge**

Plaintiff Zahnga Peabody, representing himself, sues his former employer defendant Thermo Fischer Scientific (TFS), Inc., alleging retaliation for reporting a safety violation under Title VII and ORS 659A.199, race-based discrimination under Title VII and ORS § 659A.030, age-based discrimination under the ADEA, and unlawful termination under federal and state law, 42 U.S.C. § 2000e, 29 U.S.C. §§ 621§ 660(c), and ORS §§ 659A.030 659A.199. (*See* First Am. Compl. (FAC) at 6, ECF 5.) TFS moves under Federal Rule of Civil Procedure 12(b)(6) to dismiss Peabody's claims. As explained below, TFS's motion should be GRANTED in part and DENIED in part.

**BACKGROUND**

The court construes as true the factual allegations of Peabody's Complaint. *Weston Fam. P'ship LLLP v. Twitter, Inc.*, 29 F.4th 611, 617 (9th Cir. 2022). The relevant events occurred in 2023. Peabody was hired by TFS on March 13, as a Field Service Engineer II, in the Scanning Electron Microscope (SEM)/Small Dual Beam (SDB) group. (FAC at 15.) He is a Black male, a U.S. Navy veteran, and more than 40 years old. (*Id.* at 7.)

Shortly after being hired, TFS recognized Peabody's technical contributions. Initially, Peabody's performance evaluation was positive, and he was told that he would receive formal microscopy training overseas in July. In May and June, Peabody successfully trained on the X-Ray Photoelectron Spectrometer (XPS) system and his accomplishments were acknowledged on the company website. Yet soon after, the overseas training he was set to receive was cancelled despite open seats. Peabody was not told why the training was cancelled but suspects his race played a role. (*Id*. at 15.)

Peabody alleges other instances at work that year he contends were discriminatory: TFS capitalized his name in corporate-wide communication because of his national origin; on June 18, a mandatory meeting was used to mock the Juneteenth holiday; in July, his manager held a team-building video conference during which vile and anti-Semitic jokes were made; in August, his schedule was discussed at weekly meetings, unlike other engineers who were informed of their schedules in advance; in September, Peabody was sent to job sites without "pass down" from the primary site engineer, which he contends was based on his national origin; and later in September, he was scheduled to receive SEM/SDB training from October 10 to 20, but on

Page 2 – FINDINGS AND RECOMMENDATION
*Peabody v. Thermo Fischer Scientific Inc.*, 3:25-cv-00594-AR

October 6, he received a low performance evaluation and was placed on a performance improvement plan (PIP). (*Id.* at 15-16.)

On October 22, Peabody discovered dangerous techniques in training literature and reported an OSHA high voltage safety violation to his supervisor. The technique described a procedure for bypassing high voltage interlocks on electron microscopes that could expose employees to lethal voltages. The bypass procedure was in lieu of improved work instructions. The procedure was introduced in training literature distributed during a class taught at TFS on October 9 to 19. (*Id*. at 8, 14.)

On October 23, his supervisor reported the OSHA violation to human resource trainer Annie Bowling. Bowling responded to Peabody's complaint the next day in a detailed email in which she apologized for the procedure and promised to investigate why it was included in the training literature. During a PIP review in November, Peabody again discussed the OHSA safety violation. TFS took no action. On December 1, he was terminated. (*Id*. at 15.)

Peabody asserts that he was subjected to race-based discrimination throughout his employment by being peered with co-workers who spread false rumors, engaged in verbal abuse, and questioned the relevance of the Juneteenth holiday. Peabody alleges that, because of his age, he was given fewer desirable assignments, including working on an archived X-ray system and repairing electron microscopes for which he received no training. Near the end of his employment, he felt unsupported and "trap[ped]" into a PIP. (*Id.* at 14.)

Before initiating this action, Peabody filed a charge of discrimination and retaliation with the Equal Employment Opportunities Commission (EEOC).[1] (*Id.* at 7.) Peabody alleges that he received notice of his right to sue from the EEOC on March 11, 2025. (*Id.*) He then filed this lawsuit on April 15, 2025, asserting that he exhausted his administrative remedies by filing within 90 days of March 11, 2025. (*Id.*)

In his FAC, Peabody identifies four claims: retaliation for reporting safety violations under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e and ORS § 659A.199 (**Claim One**); race and national origin discrimination under Title VII and ORS § 659A.030, on the basis of disparate treatment (**Claim Two**); age discrimination under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623(a)(2) (**Claim Three**); and constructive discharge/wrongful termination (**Claim Four**). (FAC at 8.)

As to **Claim One**, TFS contends that Peabody's retaliation claim fails as a matter of law because Title VII protects against discrimination based on race, color, national origin, or sex, not

---

[1]     In their pleadings, Peabody and TFS reference and attach documents from Peabody's EEOC and Oregon Bureau of Labor & Industries (BOLI) proceedings. (*See* FAC at 7, 9; MTD at 5-6.) Normally, if the court considers evidence outside the pleadings, it must convert ruling on a 12(b)(6) motion to dismiss into a Rule 56 motion for summary judgment. *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003). However, a court may consider "certain materials—documents attached to the complaint, documents incorporated by reference in the complaint . . . —without converting the motion to dismiss into a motion for summary judgment." *Id.* at 908; *see also Belciu v. Legacy Health*, 3:23-cv-01632-SB, 2024 WL 3293896 (D. Or. May 22, 2024), *findings and recommendation adopted by*, 2024 WL 3292909 (July 3, 2024) (explaining that it is appropriate for a court to consider a plaintiff's EEOC records under the incorporation by reference doctrine, or when the plaintiff attaches such records to the complaint); *Tsosie v. N.T.U.A. Wireless LLC*, 23-2822, 2024 WL 4971963 (9th Cir. Dec. 4, 2024) (finding no error in the district court's consideration of the EEOC charge and right-to-sue letter because the complaint referenced and relied on the documents). Accordingly, the court incorporates by reference Peabody's EEOC and BOLI documents when considering TFS's motion to dismiss.

for reporting workplace safety violations. (Mot. to Dismiss (MTD) at 6-7, ECF 12.) TFS does not move to dismiss Peabody's retaliation claim under ORS § 659A.199.

As to **Claim Two** and **Claim Three**, TFS moves to dismiss them on grounds that those claims are untimely. (MTD at 5-6) That is, TFS asserts that, because the EEOC dismissed Peabody's charge alleging race and age discrimination on March 13, 2024, and the dismissal included notice that provided 90 days to commence a lawsuit, Peabody's filing of his complaint on April 11, 2025 missed that deadline by more than a year and is therefore untimely. (*Id*. at 5-6.) TFS also challenges **Claim Two** on the merits, arguing that since Peabody did not submit facts that could prove that non-Black employees were treated more favorably than him, he cannot prove that TFS discriminated against him because of his race. (*Id.* at 8-9.) TFS also argues that Peabody's allegations, being given work assignments in a group setting, having his name capitalized, being sent to customer sites without pass-down, and being assigned undesirable tasks, are not adverse employment actions as a matter of law. (*Id.*)

As to the merits of **Claim Three**, TFS argues that Peabody has not alleged facts that suggest that his firing or any other adverse employment action was influenced by his age. (*Id.* at 7.) TFS construes **Claim Four** as a wrongful discharge claim. They argue that it should be dismissed because Peabody already has a remedy for wrongful discharge under ORS § 659A.199, as plead in **Claim One**. Since TFS does not move to dismiss **Claim One** under ORS § 659A.199, TFS argues that **Claim Four** should be dismissed since ORS § 659A.199 provides Peabody a statutory remedy for his wrongful discharge. (*Id.* at 10.)

Page 5 – FINDINGS AND RECOMMENDATION
*Peabody v. Thermo Fischer Scientific Inc.*, 3:25-cv-00594-AR

**LEGAL STANDARDS**

A court grants a Rule 12(b)(6) motion to dismiss for failure to state a claim when a claim is unsupported by a cognizable legal theory or when the complaint is without sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). Assessing the sufficiency of a complaint's factual allegations requires the court to: (1) accept that plaintiff's well-pleaded facts alleged in the complaint are true; (2) construe factual allegations in the light most favorable to plaintiff; and (3) draw all reasonable inferences from the factual allegations in favor of plaintiff. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012); *Newcal Indus. v. Ikon Off. Sol.*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). A plaintiff's legal conclusions that are couched as factual allegations, however, need not be credited as true by the court. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). Further, when a plaintiff proceeds without attorney representation (*pro se*), the court must construe the pleadings liberally and afford the plaintiff the benefit of any doubt. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

A complaint's factual allegations must "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556

Page 6 – FINDINGS AND RECOMMENDATION
*Peabody v. Thermo Fischer Scientific Inc.*, 3:25-cv-00594-AR

(2007)). Plausibility is not probability, but plausibility "asks for more than a sheer possibility that a defendant has acted unlawfully." *Mashiri v. Epsten Grinnell & Howell*, 845 F.3d 984, 988 (9th Cir. 2017) (quotation marks omitted). When assessing dismissal for failure to state a claim, a court should "grant leave to amend…unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).

## DISCUSSION

**A.    *Retaliation under Title VII and ORS § 659A.199 – Claim 1***

Title VII prohibits retaliation against an employee for "oppos[ing] any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a). Unlawful employment practices include "discharg[ing] any individual . . . because of such individual's race, color, religion, sex, or national origin." § 2000e-2(a)(1). TFS moves to dismiss Peabody's retaliation claim under Title VII but does not challenge it under ORS § 659A.199. The court discusses his ORS § 659A.199 retaliation claim with his fourth claim, wrongful termination, below.

To state a claim for retaliation under Title VII, a plaintiff must allege the following: (1) the employee engaged in protected activity, (2) the employer took some adverse action against the employee, and (3) a causal connection existed between the protected activity and the adverse action. *Folkerson v. Circus Circus Enters., Inc.*, 107 F.3d 754, 755 (9th Cir. 1997); *Thema v. Intel Corp.*, 3:23-CV-00222-IM, 2023 WL 5529978, at *3 (D. Or. Aug. 28, 2023) (applying elements of a Title VII retaliation claim in review of a motion to dismiss under Rule 12(b)(6)). Protected activities include the filing of a charge or a complaint, or testifying to an employer's alleged

Page 7 – FINDINGS AND RECOMMENDATION
*Peabody v. Thermo Fischer Scientific Inc.*, 3:25-cv-00594-AR

unlawful practices; reporting improper workplace behavior; and activities meant to oppose an employer's discriminatory practices. *Raad v. Fairbanks N. Star Borough Sch. Dist.*, 323 F.3d 1185, 1197 (9th Cir. 2003).

Peabody asserts that he was retaliated against after making safety complaints about a high-voltage interlock system on October 20, 2023, and was then placed on a performance improvement plan because of that report and was fired three months later. (FAC at 15.) Peabody does not, however, plead any facts suggesting that he engaged in a protected activity under Title VII. Complaints about safety violations, or generalized complaints about workplace safety, are not protected activity under Title VII because that statute does not regulate workplace safety. *See generally* 42 U.S.C. § 2000e-3(a). Under federal law, workplace safety is governed by the Occupational Safety and Health Act (OSHA). 29 U.S.C. §§ 651-678.

Peabody's FAC does not assert an OSHA claim, although he does reference OSHA under the "Cause of Action" section of his complaint. (FAC at 6.) Liberally construing his allegations as an OSHA-based retaliation claim does not aid Peabody here. OSHA protects employees who make complaints related to workplace safety but provides no private right of action in court for such retaliation. *See* 29 U.S.C. § 660(c)(1); *Crane v. Conoco, Inc.*, 41 F.3d 547, 553 (9th Cir. 1994) (holding that violations of OSHA do not create a private cause of action). Instead, under OSHA, an aggrieved employee's only course of action is to file a complaint with the Secretary of Labor alleging discrimination. 29 U.S.C. § 660(c)(2). The Secretary of Labor would then initiate an investigation on behalf of the employee, and if appropriate, bring an action in a United States district court. *Id.*

Page 8 – FINDINGS AND RECOMMENDATION
*Peabody v. Thermo Fischer Scientific Inc.*, 3:25-cv-00594-AR

Because reporting safety violations is not a protected activity under Title VII, Peabody fails to state a plausible federal claim for relief and his Title VII retaliation claim should be dismissed without leave to amend.

**B.    *Timeliness of Claim Two under Title VII and Claim Three under the ADEA***

"Ascertaining the date on which the [EEOC] limitations period begins is crucial to determining whether an action was timely filed." *Payan v. Aramark Mgmt. Servs. Ltd. P'ship.*, 495 F.3d 1119, 1121-22 (9th Cir. 2007). The Ninth Circuit measures the start of the limitations period from the date "on which a right-to-sue notice letter arrived at the claimant's address of record." *Id.* Under Title VII and the ADEA, a plaintiff has 90 days to bring an action after receiving a right-to-sue notice from the EEOC. 42 U.S.C § 2000e-5(f)(1); 29 U.S.C. § 626(e). For the reasons explained below, the court cannot conclude with certainty that Peabody never received a right-to-sue letter from the EEOC. Because of this, Peabody's Title VII and ADEA claims are not untimely and TFS's motion to dismiss Claim Two and Claim Three as untimely should be denied.

A complaint cannot be dismissed as time barred "unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim." *Von Saher v. Norton Simon Museum of Art*, 592 F.3d 954, 969 (9th Cir. 2010) (citation omitted). That means a "motion to dismiss based on the running of the statute of limitations period may be granted only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206 (9th Cir. 1995) (citation omitted). The applicability of statutory tolling "often depends on matters

Page 9 – FINDINGS AND RECOMMENDATION
*Peabody v. Thermo Fischer Scientific Inc.*, 3:25-cv-00594-AR

outside the pleadings," and is thus "not generally amenable to resolution on a Rule 12(b)(6) motion." *Id.* (quoting *Cervantes v. City of San Diego*, 5 F.3d 1273, 1276 (9th Cir. 1993)).

TFS moves to dismiss Peabody's Title VII and ADEA claims as untimely because the claims were "filed more than 90 days after the EEOC's right-to-sue notice." (MTD at 6.) In his complaint, Peabody references EEOC case number 551-2024-01298 (1298) under the heading "exhaustion of his administrative remedies." (FAC at 7.) Peabody filed a charge of discrimination with the EEOC, with case number 1298, on March 11, 2024, alleging race and age discrimination. (*See* Charge of Discrim. at 1, ECF 13-1 at 1.) TFS relies on a right-to-sue letter issued by the EEOC on March 13, 2024, stating that the EEOC's investigation was closed. (*See* Determination of Charge at 1; ECF 13-2 at 1.) According to TFS, case number 1298 concluded on March 13, 2024, meaning that Peabody had until June 11, 2024, to timely file his suit. (EEOC Notice of Right to Sue, ECF 20-1 at 4.) Because Peabody filed this lawsuit on April 11, 2025, almost one year later, TFS argues that his federal discrimination claims are untimely and should be dismissed.

Attached to Peabody's complaint is a right-to-sue notice from BOLI dated March 11, 2025.[2] (FAC at 9.) That letter informs Peabody that his case with BOLI is closed because it "reached its one year anniversary date." (*Id.* at 9.) In response to TFS's timeliness argument, Peabody asserts that he received four "confirmations" that he exhausted his administrative

---

[2]    In his FAC, Peabody stated that "the EEOC issued a notice of right to sue on March 19, 2025," but acknowledged in his response that the date in his FAC was a typographical mistake. (Resp. at 20.) The EEOC documents submitted by the parties reveal that the correct date is March 11, 2025, not March 19, 2025.

remedies. (Resp. at 20, ECF 14; ECF 14-1 at 7-14.) However, three of the four documents he attaches in response are from BOLI and the document he attaches from the EEOC has a different case number from that in his FAC. (*Compare* FAC at 7 (alleging administrative exhaustion in his FAC through EEOC case number 1298), *with* Resp. Attachment ECF 14-1 at 13 (attaching notice in EEOC Case 38D-2024-00664 in response.)) In its reply, TFS asserts that case 38D-2024-00664 "was a duplicative charge to EEOC Case #1298." (Reply at 3; ECF 19) The court confines its analysis to EEOC case number 1298 because that is the case on which Peabody relies in his FAC to establish exhaustion.

TFS also submitted correspondence between Peabody and the EEOC regarding case 1298. (*See* ECF 20-1 at 7-13.) Peabody emailed the EEOC office on April 10, 2024, requesting reconsideration of its March 13, 2024, decision to close their investigation. (*Id.* at 12.) An enforcement supervisor responded the next day stating that the determination was final, but to request reconsideration, he would need to provide "additional, new information and/or evidence." (*Id.* at 9.) Peabody responded with the same facts as alleged in his initial complaint, that he is "writing to request reconsideration of the final determination," and that "evidence of discrimination is listed in the original allegation." (*Id.* at 8.) A field officer responded "received" on April 30, 2024. (*Id.* at 7.)

After that email exchange, Peabody received a letter from the EEOC dated June 11, 2024, stating that the Seattle Field Office of the EEOC intended to investigate his discrimination charge in case number 1298, and that BOLI was deferring their investigation to the EEOC. (*Id.* at 14.) The record contains no further communication between the EEOC and Peabody regarding reconsideration of case number 1298 until Peabody's letter from BOLI dated March 11, 2025.

Page 11 – FINDINGS AND RECOMMENDATION
*Peabody v. Thermo Fischer Scientific Inc.*, 3:25-cv-00594-AR

(*Id.* at 23.) The record does not reflect that Peabody received a right-to-sue notice from the 1298 EEOC case after the June 11, 2024, letter.

Based on Peabody's FAC and the EEOC and BOLI documents, the court cannot determine if the EEOC reopened its investigation or issued another right to sue letter. Reviewing the record in the light most favorable to Peabody, the court cannot conclude with certainty that Claim Two under Title VII and Claim Three under the ADEA are untimely. Accordingly, TFS's motion to dismiss those claims as untimely should be denied.

**C.**      ***Race and National Origin Discrimination Under Title VII and ORS § 659A.030 – Claim Two***

Title VII and ORS § 659A.030 prohibit disparate treatment[3] with respect to compensation, terms, conditions, or privileges of employment because of an individual's race or national origin. *See* 42 U.S.C. § 2000e-2(a)(1) ("It shall be an unlawful employment practice for an employer—to . . . discharge any individual, or otherwise discriminate against any individual . . . because of such individual's race, color, religion, sex or national origin.").

---

[3]      Although it is unclear from the FAC what theory of discrimination Peabody is bringing, TFS in its Motion to Dismiss characterizes Claim 2 as alleging disparate treatment. (MTD at 8-9.) Peabody has not asserted otherwise in his Response, and the court understands that he alleges disparate treatment. Claims of employment discrimination under Title VII may arise in different ways: "disparate treatment," "disparate impact," and "hostile work environment" under Title VII are common theories of proving discrimination. Under a disparate treatment theory, an "employer simply treats some people less favorably than others because of their race, color, religion, sex, or national origin." *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977). The disparate impact theory involves employment practices that appear neutral in its treatment of different groups, but whose impact falls more harshly on one group than another. *Raytheon Co. v. Hernandez*, 540 U.S. 44, 52 (2003). The hostile work environment theory of discrimination requires one to show workplace discrimination so pervasive that it interferes with the "enjoyment of all benefits…and conditions of the contractual relationship" between employee and employer. *Manatt v. Bank of Am., NA*, 339 F.3d 792, 797 (9th Cir. 2003) (internal quotations omitted).

Peabody's state and federal discrimination claims can be analyzed together since "ORS 659A.030 was modeled after Title VII." *Dawson v. Entek Int'l*, 630 F.3d 928, 935 (9th Cir. 2011).

To state a claim for discrimination under Title VII, Peabody must plausibly allege that (1) he was a member of a protected class; (2) he performed his job satisfactorily; (3) he suffered an adverse employment action; and (4) TFS treated similarly situated employees outside of Peabody's protected class more favorably. *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028 (9th Cir. 2006). Although Peabody is not required to provide exhaustive detail of the racial discrimination he experienced, he must still provide sufficiently detailed allegations to "nudge his claim of purposeful discrimination across the line from conceivable to plausible." *Iqbal*, 556 U.S. at 683 (quoting *Twombly*, 550 U.S. at 570) (citation modified).

TFS does not dispute that Peabody is a member of a protected class, and the court finds that he adequately alleges that he is a member of a protected class. (*See* FAC at 7-8, "Plaintiff is a Black male.") Peabody also plausibly alleges that he performed his job duties well and was subject to an adverse employment action. (*Id.* at 7, 14-15 "[Peabody] performed his duties with excellence and was recognized internally," "[Peabody] performed assignment[s] with top notch efficiency.")

Yet Peabody has not plausibly alleged that TFS treated similarly situated employees outside of Peabody's protected class more favorably. Peabody's FAC references a mandatory meeting in which Juneteenth was mocked and a separate video conference in which "the most vile and anti-Semitic jokes were made." (FAC at 15.) From these brief references, it is not plausible that attendees in these meetings outside of Peabody's protected class were treated more favorably. Peabody alleges that he was "dehumanized weekly" by being given his schedule in

Page 13 – FINDINGS AND RECOMMENDATION
*Peabody v. Thermo Fischer Scientific Inc.*, 3:25-cv-00594-AR

front of his colleagues, "all of whom had received their schedules before the weekly meeting." (FAC at 14.) However, he does not allege that the colleagues who were given their schedules beforehand were outside of his protected class. He asserts that he was set up for a PIP by being "sent to sites without pass down from primary site engineer" because TFS "believed [this] recipe for failure would work on person of color." (*Id.*) Peabody does not assert that non-Black employees were not being sent to sites without pass down. Peabody alleges that TFS wrote his name in "all capital letters" because of his national origin. (*Id.* at 14.) Like his other assertions, the court cannot determine from his FAC whether non-Black employees did not have their names listed in capital letters. These practices, while shameful, are not enough to plausibly allege a claim of racial discrimination under Title VII because they do not demonstrate that similarly situated employees outside of Peabody's protected class were treated more favorably.

As pleaded, Peabody's assertions do not give rise to an inference of racial discrimination and TFS's motion to dismiss Peabody's race discrimination claims under Title VII should be granted with leave to amend.

**D.    *Age Discrimination under the ADEA – Claim Three***

The ADEA makes it unlawful for an employer to "to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age [.]" 29 U.S.C § 623(a)(2). To establish a case of age discrimination, Peabody must allege that he was: (1) at least 40 years old; (2) performing his job satisfactorily; (3) discharged; (4) either replaced by a substantially younger employee with equal or inferior qualifications or under circumstances otherwise giving rise to an inference of age discrimination. *Sheppard v. David Evans & Assoc.*, 694 F.3d 1045, 1050 (9th Cir. 2012) (internal citations and

quotations omitted). As explained in *Sheppard*, an "entirely plausible" scenario of age discrimination is when an employee was "over forty and received consistently good performance reviews, but was nevertheless terminated . . . while younger workers in the same position kept their jobs." *Id.*

Within his age discrimination claim, Peabody asserts that he was subjected to TFS's "disparate treatment" due to his age. (FAC at 8.) The "disparate treatment" theory under employment discrimination is demonstrated "when the employer simply treats some people less favorably than others because of a protected characteristic." *Sheppard*, 694 F.3d at 1049 n.1 (quoting *Enlow v. Salem-Keizer Yellow Cab Co.*, 389 F.3d 802, 811 (9th Cir. 2004) (citation modified).[4]

In its motion to dismiss, TFS contends that Peabody fails to allege that any adverse action was influenced by age. (MTD at 7.)

Peabody alleges that he is over the age of 40, performed his job duties "with excellence," and was fired on December 1, 2023. (FAC at 7-8.) He contends that he was subjected to "age-based discrimination" when TFS denied him training that would have qualified him for advancement, that he was given fewer desirable assignments by being assigned to "put an archived X-ray system into specification," and was terminated. (FAC at 7-8, 14.) However,

---

[4]    Although a plaintiff is not required to plead a *prima facie* case of age discrimination to survive a motion to dismiss, the elements of a *prima facie* case are a useful tool in determining whether the challenged complaint contains sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Ashraf v. Providence Newberg Med. Ctr.*, 3:24-CV-02166-JR, 2025 WL 2615149, at *4 (D. Or. Aug. 4, 2025), *findings and recommendation adopted by*, 2025 WL 2476517 (Aug. 28, 2025).

Peabody has not plausibly alleged that he was treated less favorably than his younger coworkers because he does not describe that they were given training or less desirable work assignments.[5] As pleaded, these circumstances do not give rise to a plausible inference of age discrimination. TFS's motion to dismiss Peabody's ADEA claim should be granted with leave to amend.

**E.**     ***Common Law Wrongful Discharge – Claim Four***

TFS moves to dismiss Peabody's wrongful discharge claim, arguing that Peabody is precluded from bringing this common law claim because his whistleblower retaliation claim under ORS § 659 A.199 provides an adequate statutory remedy.[6]

Under Oregon law, a claim for common law wrongful discharge is not available if "(1) an existing remedy adequately protects the public interest in question, or (2) the legislature has intentionally abrogated the common law remedies by establishing an exclusive remedy (regardless of whether the courts perceive that remedy to be adequate)." *Arnold v. Pfizer, Inc.*, 970 F. Supp. 2d 1106, 1145 (D. Or. 2013); *Walker v. State ex rel. Or. Travel Info. Council*, 367 Or. 761, 778 (2021) (explaining that "common law wrongful discharge is an interstitial tort: The tort may only be invoked when another claim does not provide a plaintiff with an adequate remedy").

---

[5]     Peabody references disparate treatment relative to younger coworkers in his response to TFS's motion, (Resp. at 13, ECF 14), however, the court's review of a motion to dismiss under Rule 12(b)(6) is generally limited to the allegations of the complaint, which cannot be amended through briefing. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).

[6]     Peabody's "Constructive Discharge/Wrongful Termination" claim is construed as a wrongful discharge claim.

Page 16 – FINDINGS AND RECOMMENDATION
*Peabody v. Thermo Fischer Scientific Inc.*, 3:25-cv-00594-AR

Courts in this district have previously found that a common law wrongful discharge claim provides the same remedies as a whistleblower retaliation claim under ORS § 659A.199 and that two claims cannot be pursued simultaneously when based on the same conduct. *See Luke v. Target Corp.*, 3:18-CV-381-SI, 2018 WL 2144347, at *2 (D. Or. May 9, 2018) (compiling decisions in the District of Oregon that have precluded common law wrongful discharge claims which simultaneously bring whistleblower retaliation claims under ORS § 659A.030). ORS § 659A.199 provides an "adequate (if not better) remedy" for Peabody. *Duran v. Window Prods., Inc.*, CV-10-125-ST, 2010 WL 6420572, at *5 (D. Or. Dec. 22, 2010), *findings and recommendation adopted by*, 2011 WL 1261190 (Mar. 29, 2011).

TFS has not moved to dismiss Peabody's retaliation claim under ORS § 659A.199 and thus, Peabody's statutory remedy thus remains. Because Peabody can proceed under ORS § 659A.199, his common law wrongful termination claim is precluded. *See Wolff v. Tomahawk Mfg.*, 689 F. Supp. 3d 923, 952 (D. Or. 2023) (finding that plaintiff's wrongful termination claim was precluded by ORS § 659A.199).

TFS's motion to dismiss Peabody's wrongful termination claim should be granted without leave to amend.

**F.    *USERRA Claim***

The Uniformed Services and Employment and Reemployment Rights Act (USERRA) prohibits employment discrimination based on military service. *See* 38 U.S.C. § 4311(a). Under USERRA, an aggrieved employee may file a complaint with the Secretary of Labor, who will then investigate the complaint. *Id.* § 4322(b)-(d). Unlike Title VII and ADEA claims, there is no exhaustion requirement under USERRA. *See id.* § 4323(3)(A) ("A person may commence an

action for relief with respect to a complaint against . . . a private employer if the person—(A) has chosen not to apply to the Secretary for assistance under section 4322(a)").

In his response to TFS's motion to dismiss, Peabody raises a USERRA claim. (Resp. at 16, ECF 14). Peabody states that he disclosed his veteran status to TFS and was treated differently than his non-veteran coworkers. (*Id.*) He incorporates the same facts as other claims, contending that he was assigned to dual-tool roles, declined training, sent to job sites alone, and was fired without severance, offboarding, or a physical examination. (*Id.*) According to Peabody, his manager was aware that he was a veteran, and that his veteran status likely contributed to his "motive-based discrimination." (*Id.*)

In his FAC, Peabody asserts that he is a "Black male, over 40, and a U.S. Navy Veteran." (FAC at 7.) He does not, however, identify USERRA as a distinct cause of action. TFS argues in its reply that the FAC does not "contain any allegations suggesting that [he] sought to bring claims related to his veteran status," and that Peabody's USERRA allegations are misplaced. (Reply at 5; ECF 19.)

The court's review of a motion to dismiss under Rule 12(b)(6) is generally limited to the allegations of the complaint, which cannot be amended through briefing. *Lee*, 250 F.3d 668, 688 ("When the legal sufficiency of a complaint's allegations is tested by a motion under Rule 12(b)(6), review is limited to the complaint."); *Frenzel v. AliphCom*, 76 F. Supp. 3d 999, 1009 (N.D. Cal. 2014) (explaining that "the complaint may not be amended by the briefs in opposition to a motion to dismiss" (quotation omitted)). Thus, the court does not construe his FAC to assert a claim under USERRA. Should Peabody choose to file an amended complaint, he may include a USERRA claim at that time.

Page 18 – FINDINGS AND RECOMMENDATION
*Peabody v. Thermo Fischer Scientific Inc.*, 3:25-cv-00594-AR

## CONCLUSION

For the foregoing reasons, the court recommends that TFS's Motion to Dismiss (ECF 12) be GRANTED IN PART and DENIED IN PART.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due within 14 days. If no objections are filed, the Findings and Recommendation will go under advisement on that date. If objections are filed, a response is due within 14 days. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED: March 12, 2026.

_____
JEFF ARMISTEAD
United States Magistrate Judge